**BETH ROCHEL SEMINARY, Appellant,**

v.

**William J. BENNETT, Secretary, Department of Education, et al.**

No. 86–5146.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1986.
Decided Aug. 4, 1987.

Albert H. Turkus, Washington, D.C., for appellant. Michael B. Goldstein, James M. McElfish, Jr., and Blain B. Butner, Washington, D.C., were on the brief, for appellant.

A. Patricia Frohman, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before STARR and BUCKLEY, Circuit Judges, and OLIVER GASCH,[*] U.S. Senior District Judge for the District of Columbia.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The Department of Education interprets the Higher Education Act of 1965 to require that institutions desiring to participate in federal programs for student financial aid either receive or be about to receive accreditation from a nationally recognized accrediting body, or show that credits earned by its students are accepted, upon transfer and enrollment, by at least three accredited institutions. Appellant applied for qualification under the Act on the basis of assurances received from three accredited institutions that its credits would be accepted on transfer.

The Department initially approved the request and disbursed funds to appellant. Subsequently, on learning that appellant's students did not actually enroll at one of the three institutions, the Department disqualified appellant from all student financial aid programs without a hearing. It also demanded that appellant return all federal funds already received. The district court granted the Department's motion for summary judgment, and we affirm, 624 F.Supp. 911. We hold that the Department's construction of the statute is reasonable and reject appellant's assertion of a due process right to a hearing.

## I. BACKGROUND

Beth Rochel Seminary, a non-profit seminary for Jewish women with a campus in Monsey, New York, has not sought accreditation because the main accrediting body recognized by the Department of Edu-

[*] Sitting by designation pursuant to 28 U.S.C. § 294(d).

cation, the Association of Advanced Rabbinical and Talmudic Schools, accredits only male institutions. Affidavit of Jacob Rosenbaum at ¶ 3 (Joint Appendix ("J.A.") at 51–52). Under Title IV of the Higher Education Act of 1965, as amended ("Act"), non-accredited post-secondary schools like Beth Rochel may participate in federal financial aid programs for students only if their "credits are accepted, on transfer, by not less than three institutions which are so accredited, for credit on the same basis as if transferred from an institution so accredited." 20 U.S.C. § 1141(a)(5)(B) (1982) ("three institutional certification" or "3–IC").

Beth Rochel applied for 3–IC status and identified three accredited institutions of higher education which, it asserted, accepted its academic credits on the same basis as credits from other accredited institutions: Touro College, Adelphi University, and Marywood College. When the Department contacted these institutions, all three responded that they had offered transfer admission with academic credit to Beth Rochel students. On November 17, 1980, the Department certified Beth Rochel under section 1141(a)(5)(B) for a period of three years. Letter from Joseph M. Hardman, Department of Education, to Yankel Rosenbaum, Administrator of Beth Rochel Seminary (Nov. 17, 1980) (J.A. at 85–86). The Department's certification letter stated that "[t]he institution remains eligible *only* while it continues to meet all statutory and regulatory requirements...." *Id.* (J.A. at 85) (emphasis in original).

Beth Rochel students became eligible for federal financial aid, and the school received $52,268 in federal funds which it disbursed to the eligible students. The Chief of the College Eligibility Unit within the Department's Office of Postsecondary Education, Joseph M. Hardman, subsequently asked Touro College whether Beth Rochel students had actually enrolled at Touro following their admission with academic credit. Norman Twersky, Dean of Admissions of Touro College, responded on November 9, 1981, that although the Beth Rochel students had been offered admission with credit for their work at the Seminary, none had registered at Touro. Letter from Norman Twersky to Joseph M. Hardman (Nov. 9, 1981) (J.A. at 95).

Citing that information, the Department then informed Beth Rochel that it "has not satisfied the statutory requirements for institutional eligibility, and in fact has never been an eligible institution to apply for student financial assistance." Letter from Richard J. Rowe, Department of Education, to Yankel Rosenbaum (Dec. 7, 1981) at 1 (J.A. at 92). On July 23, 1982, the Department also requested that Beth Rochel "prepare a check in the amount of $52,268 payable to the [United States Department of Education]" to return financial aid funds inappropriately received. Letter from Robert J. McKiernan, Department of Education, to Yankel Rosenbaum (July 13, 1982) (J.A. at 173).

Beth Rochel filed its complaint in the district court seeking review of the Department's withdrawal of financial aid certification. On motions for summary judgment, the district court held for the government.

## II. DISCUSSION

■ The critical fact, whether Beth Rochel students enrolled or attended classes at Touro College, is not in dispute. The case therefore turns on the meaning of the phrase "on transfer" in section 1141(a)(5)(B). Beth Rochel contends that the phrase does not require that its transferring students actually register and attend classes at all three accredited institutions, as the Department asserts, but merely that they be admitted to study by three accredited institutions willing to accept the academic credits they earned at Beth Rochel. We disagree.

The term "on transfer" is not crystal clear. We do not have to decide, however, whether it is sufficiently clear to admit no other construction than that reached by the Department of Education. Rather, because the Department of Education is the agency charged with the administration of section 1141(a)(5)(B), and because we find that its construction is at least reasonable, we defer to the Department's conclusion

that the statute requires actual enrollment by students transferring from the unaccredited institution seeking 3–IC status. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

A large part of Beth Rochel's arguments before this court has focused on what Beth Rochel believes are the general purposes of the statute:

> The 3IC [sic] method was intended by Congress to broaden the availability of federal financial aid funds to include students attending non-traditional or specialized postsecondary institutions like Beth Rochel Seminary. The purpose of the provision was solely to ensure that the unaccredited institutions seeking eligibility for their students to participate in student aid programs be of acceptable academic quality. Beth Rochel meets this criterion.

Brief for Appellant at 12–13 (footnotes omitted). Beth Rochel further argues that as the Act makes no reference to enrollment, the Department may not impute such a requirement. Because students are free at any time to decide *not* to enroll in a particular institution after they and their credits have been accepted for transfer, appellant maintains that the Department's construction has the effect of "shift[ing] the focus of the statute from the decision by the accredited institution to the subsequent decision by the applicable students." *Id.* at 14.

There can be no doubt that appellant offers a reasonable interpretation of the statutory language. That language, however, is subject to more than one interpretation as the construction placed on it by both the Department and the district court amply testifies. Therefore, as Beth Rochel has failed to point to any evidence that "Congress has directly spoken to the precise question at issue," *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781, we are required to defer to the Department's permissible construction of the Act.

In addition to advancing its own interpretation of the phrase "on transfer," Beth Rochel contends that the Department's con-

struction works a change in policy. Beth Rochel points to no instance, however, in which the Department accepted a school's 3–IC application merely on the basis of three accredited institutions' acceptance with credit of that school's students. Therefore none of the Department's prior 3–IC actions cited by Beth Rochel is inconsistent with the view that "on transfer" means "actually on transfer." It is true that, after its experience with Beth Rochel, the Department modified its 3–IC verification forms to inquire whether students from schools seeking 3–IC certification had actually enrolled and attended classes at three accredited institutions. This is easily and reasonably explained as a departmental response to the events leading to this litigation and does not suggest a change from prior understanding of the phrase "on transfer."

Finally, Beth Rochel argues the Department violated its right to notice and hearing pursuant to 20 U.S.C. § 1094 (1982) and regulations promulgated thereunder, as well as Beth Rochel's right to a hearing pursuant to the due process clause of the Fifth Amendment to the Constitution. Section 1094 permits the Secretary of Health and Human Services to terminate the eligibility of "an otherwise eligible institution" only after notice and a hearing on the record. 20 U.S.C. § 1094(b) (1982). The Secretary has issued a regulation strictly interpreting the term "otherwise eligible institution" as used in section 1094. The regulation provides that a right to notice and hearing "does not apply to a determination that ... [a]n institution of higher education fails to meet the statutory definition set forth in section [ ] ... 1201 of the Higher Education Act." 34 C.F.R. § 668.71(c)(1) (1986).

Beth Rochel emphasizes that the term "determination" in section 668.71(c) really means *"initial* determination." As the determination challenged here is not the initial decision granting Beth Rochel 3–IC status, but rather the Department's subsequent finding that Beth Rochel's factual representations were inaccurate, appellant contends that section 668.71 does not

apply and its right to notice and hearing under section 1094(b) does.

We find the argument unpersuasive. The regulation does not state that the notice and hearing right is inapplicable only to an *initial* determination. Moreover, Beth Rochel can point to no clear Department practice favoring a narrow construction of section 668.71 at the expense of the regulation's clearly broad language. Although the circumstances of this case are unique and the Department has never before done exactly what it did here, no one has suggested an agency has no discretion reasonably to interpret its prior rules and decisions to reach the unique circumstances that seem inevitably to arise in each case. Such an approach would make it impossible for the Department to apply general rules to specific situations and is therefore untenable.

█ Appellant's due process argument also fails. Although it invokes the principles of *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), Beth Rochel does not dispute the critical fact that none of its students had registered or attended classes at Touro College when its certification was withdrawn. No constitutional right to a hearing arises where the dispositive facts are not in dispute. *See Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (wrongful discharge hearing is not required when facts are not in dispute). As a fact-finding hearing would have served no practical purpose, one was not required by the due process clause of the Fifth Amendment to the Constitution. In any event, Beth Rochel presented its arguments at length in its correspondence with the Department, and there is every indication that its views were adequately considered.

### III. Conclusion

The judgment of the district court is affirmed in all respects. Beth Rochel Seminary remains indebted to the federal government for the $52,268 in federal funds it received as the result of inappropriate 3–IC certification.

*So ordered.*